IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02177

OLIVER BIEWALD, an individual,

PLAINTIFF,

v.

SEP SOFTWARE CORPORATION SYSTEMS, INC., d/b/a SEP SOFTWARE CORPORATION, a Delaware for-profit corporation; SEP AG, a German for-profit corporation; and TIMOTHY WAGNER, an individual,

DEFENDANTS.

**DEFENDANT TIMOTHY WAGNER'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 12(i)**

**COMES NOW** Defendant Timothy Wagner, an individual, by and through counsel, Edward Dale Parrish PC, and hereby moves this Court for an Order dismissing Plaintiff Oliver Biewald's ("Plaintiff") claims against Defendant Timothy Wagner ("Defendant Wagner") as set forth in Plaintiff's First Amended Complaint (ECF No 6). In support of this Motion to Dismiss, Defendant Wagner states:

1. **Duty to Confer**: Pursuant to D.C.Colo.LCivR 7.1(b)(2), there is no duty to confer regarding motions filed pursuant to Fed.R.Civ.P. 12.

**Rule 12(b)(6) Standards**

2. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

… (6) failure to state a claim upon which relief can be granted. … A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed.R.Civ.P. 12(b).

3. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003), *citations and quotation marks omitted*.

4. "The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. … Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss *sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 935 F.2d 1106, 1109–10 (10th Cir. 1991), *citations and quotation marks omitted*.

5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v.

Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), *internal citations omitted*, *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

6. "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Second, only a complaint that states a plausible claim for relief [against a named defendant] survives a motion to dismiss." Id. at 129 S.Ct. at 1949–50.

7. Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. Southern Disposal, Inc., v. Texas Waste, 161 F.3d 1259, 1262 (10th Cir.1998) ("However, we need not accept Appellant's conclusory allegations as true"). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949, *internal brackets removed*. Moreover, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. at 1949, *citation omitted, internal brackets omitted*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 129 S.Ct. at 1949, *citation omitted*.

**Facts**

8. Because a court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff, Hall, 935 F.2d at 1109–10, *supra*, for purposes of this Motion to Dismiss only, Defendant Wagner asserts that the factual allegations in the First Amended Complaint are to be construed as true. Id.

9. In the First Amended Complaint, Plaintiff sets forth a lengthy and detailed recitation of alleged actions that led up to the filing of his First Amended Complaint. *See, generally,* First Amended Complaint (ECF No. 6).

10. The "Employment Agreement," which forms the basis for Plaintiff's First Amended Complaint, was entered into by and between Plaintiff and "Defendant SEP Corp. and Defendant SEP AG." Id. at ¶1. Defendant SEP Corp. is a Delaware corporation, Id. at ¶10, Defendant SEP AG is a German corporation with a principal place of business in Germany, Id. at ¶11. Defendant Wagner is an individual, Id. at ¶12, who is also "President of Defendant SEP Corp." Id. at ¶15. The Employment Agreement was signed by both "Defendant Wagner *on behalf of* Defendant SEP Corp. and Mr. Georg Moosreiner (Chairman of the Board of Defendant SEP Corp. and CEO of Defendant SEP AG ('Mr. Moosreiner') *on behalf of* Defendant SEP AG." Id. at ¶21 (emphasis added).

11. "Defendant SEP Corp. and Defendant SEP AG agreed to pay [Plaintiff]." Id. at ¶¶27-28. Defendant Wagner did not. Id.

12. The Employment Agreement specifically notes that the parties to the Employment Agreement are as follows: "SEP Software Corp, its owners and/or parents (including SEP AG, Ziegelstrasse 1, 83629 Weyarn, Germany), its subsidiaries, successors and assigns … and

Page | 4

[Plaintiff]." Employment Agreement at p.1 (ECF No. 8-1), *emphasis added*. *Note* <u>Utah Gospel Mission v. Salt Lake City Corp.</u>, 425 F.3d 1249, 1253–54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute [without converting the motion to dismiss into a motion for summary judgment]").

13. The Employment Agreement sets forth in detail Plaintiff's duties, responsibilities, and actions. Exhibit A to Employment Agreement (ECF No. 8-1, page 5). *See also* Employment Agreement (ECF 8-1, page 1) ("[Plaintiff accepts such employment and agrees to employ his best efforts to discharge the duties set forth in Attachment A, [and] such other services consistent with his Position"). Plaintiff, pursuant the Employment Agreement, was also expressly permitted to "perform his responsibilities for the Company in any geographical location, and he is specifically authorized to work primarily out of his home office in Center Barnstead, New Hampshire." <u>Id.</u>

14. Plaintiff's compensation, including benefits, for his services is also set forth in the Employment Agreement. <u>Id.</u> at pp.1-2.

15. Defendant SEP Corp and Defendant SEG AG "worked together to ensure [Plaintiff] was authorized for work and that he was quickly set up on payroll." First Amended Complaint (ECF No. 6 ¶47). Defendant SEP AG gave Plaintiff access to "secure, internal websites of Defendant SEP AG, they ordered (and paid for) business cards for [Plaintiff], and they issued him a uniform for trade-shows." <u>Id.</u> Defendant SEP AG gave Plaintiff a "set of keys to the corporate headquarters building of Defendant SEP AG, so that [Plaintiff] could work alone in the office, late at night." <u>Id.</u> at ¶48

16. Both Defendant SEP Corp and Defendant SEP AG directed Plaintiff's activities and both shared in Plaintiff's expenses. Id. at ¶¶50-57.

17. As set forth above, Plaintiff, per the Employment Agreement, received direction, authorization, supervision, and instruction from both Defendant Wagner and Mr. Moosreiner, among many other individuals. *See, for example,* Id. at ¶¶46-47, 50, 52, 54, 56, 62, 144, 154). Both corporate Defendants paid the Plaintiff. *See, for example,* Id. at ¶¶59, 61, 263, 281.

18. Defendant Wagner, however, was also subject to control by Defendant SEP AG. *See, for example,* Id. at ¶60 ("[Plaintiff] and Defendant Wagner were called upon to take part in the 'SEP-to-the-Top" event in Tegernsee, Germany during February 2016, and both were required, …, to take part in the 'SEP USA HQ Planning Meeting' in Boulder, Colorado during February 2016"). *See also* Id. at ¶229 ("[SEP AG employee] assured [Plaintiff] in the same Skype message that Defendant Wagner will take the course of action that [Plaintiff] suggested"). *See also* Id. at ¶235 ("[SEP AG employee] directed Defendant Wagner and [Plaintiff] to call Mr. Moosreiner that afternoon to clear up the outstanding issues"); Id. at ¶242 ("Defendant Wagner stated that he was directed to continue paying [Plaintiff]"); Id. at ¶252 ("Mr. Moosreiner responded that he had directed Defendant Wagner to pay the expenses"); Id. at ¶256 ("Mr. Moosreiner responded … that he had given Defendant Wagner a mandate to pay [Plaintiff's] earned income"); Id. at ¶263 ("Mr. Moosreiner responded, confirming wire instructions for $10,000.00").

19. Defendant Wagner acted as an agent of SEP Corp., in his capacity as President and CEO, in all interactions and contact with the Plaintiff, Oliver Biewald.

20. Defendant Wagner was not the decision-maker regarding Plaintiff's continued employment and compensation; Defendant SEP AG, by and through Mr. Moosreiner, was. *See,*

*for example,* First Amended Complaint (ECF No. 6 at ¶86) ("Defendant Wagner wrote, 'We will not be able to pay you your salary for December. Please discuss your contract with Georg [Mr. Moosreiner]'"). *See* Id. at ¶88 ([Plaintiff] wrote another email to Mr. Moosreiner, copying Defendant Wagner, requesting an immediate resolution to the business expenses still outstanding"); Id. at ¶89 ("Mr. Moosreiner took action and caused Defendant Wagner to quickly bank-transfer the amounts due to Mr. Biewald"); Id. at ¶263. After the incident discussed above, Plaintiff personally met with Mr. Moosreiner in order to "calm the repeated concerns" of Plaintiff. Id. at ¶91. *See also* Id. at §132 ("Mr. Moosreiner had instructed Defendant Wager to continue to pay [Plaintiff] as had been done up to that point. The email read that as of September 1, 2017, Defendant SEP AG would overtake the costs and Defendant Wagner could deduct these from the license fees owed to Defendant SEP AG").

21. The above-referenced pattern is repeated throughout Plaintiff's First Amended Complaint: Plaintiff complains, Defendant Wagner responds, Defendant SEP AG, through the person of Mr. Moosreiner and others, override Defendant Wagner and direct Defendant Wagner to comply with Plaintiff's requests. *See, for example,* Id. at ¶¶92-97; ¶¶110, 117-121; ¶132 ("Mr. Moosreiner had instructed Defendant Wagner to continue to pay [Plaintiff]"); ¶¶133, 136-154 ("Mr. Moosreiner and Mr. Ruoff agreed with [Plaintiff]. Both men assured [Plaintiff] that they would immediately call Defendant Wagner and demand that he pay [Plaintiff's] full September salary without delay"); ¶242 ("Defendant Wagner stated that he was directed to continue paying [Plaintiff]'s medical insurance, paid [Plaintiff] salary…"); ¶256; ¶264 ("[Plaintiff] received a payment in the gross amount of $10,000.00 from Defendant SEP AG"); ¶281; ¶292 ("Mr. Moosreiner did not address or pay [Plaintiff's] final paycheck…"); ¶294 ("Mr. Moosreiner

externally emailed [Plaintiff] stating that [Plaintiff's] escalations for his unpaid wages were blocking business operations");

22. As set forth in the Employment Agreement, Defendant SEP AG is the owner and parent of Defendant SEP Corp. (ECF No. 8-1, page 1). Georg Moosreiner is the Chairman of the Board of Directors of Defendant SEP Corp and he is also CEO of Defendant SEP AG. (ECF No. 6 ¶21). As set forth above, if Mr. Moosreiner, and others affiliated with Defendant SEP AG, did not like any of the actions taken by Defendant Wagner for SEP Corp. *vis a vis* Plaintiff, they directed Defendant Wagner to comply with Plaintiff's requests, including requests for payments. *Supra*.

23. As the Employment Agreement was between Defendant SEP Corp, Defendant SEP AG, and Plaintiff Biewald, Defendant Wagner is not liable for the actions of the corporate Defendants regarding Plaintiff's claims for relief. *See* United States v. Van Diviner, 822 F.2d 960, 963 (10th Cir. 1987) (Ordinarily, a corporation is regarded as a separate entity distinct from the individuals comprising it. Personal liability for a corporation's debts cannot be imposed on an individual merely because he is an officer or shareholder of that corporation").

24. Plaintiff's Complaint only alleges two claims for relief (Eighth and Ninth Claims for Relief) against Defendant Wagner, which claims for relief are based upon alleged violations of the FLSA. First Amended Complaint (ECF No 6 ¶¶379-405). Plaintiff bases his claims for relief against Defendant Wagner, as an individual, on the assertion that Defendant Wagner is an "employer under the FLSA," citing 29 U.S.C. §203(a).[1] First Amended Complaint (ECF No 6

---

[1] The "Fair Labor Standards Act," 29 U.S.C. §§201 *et seq*. *See* First Amended Complaint at ¶¶379-405. (ECF No. 6)

Page | 8

¶381) ("Defendant Wagner had supervisory authority over [Plaintiff] and is personally liable as an employer under the FLSA").  Because Defendant Wagner is not an "employer" as defined by 29 U.S.C. §203(a), he is not individually liable for any alleged violations of the "FLSA," regardless of theory.

## Argument

### Defendant Wagner is not liable to Plaintiff on Plaintiff's Eighth and Ninth Claims for Relief for alleged violations of the FLSA because Defendant Wagner is not an "Employer" as defined by 29 U.S.C. §203(d)

25.  The claims for relief in Plaintiff's First Amended Complaint asserted against Defendant Wagner are Plaintiff's Eighth and Ninth Claims for Relief, which are claims for relief premised upon alleged violations of the FLSA.  *See* First Amended Complaint at ¶¶379-393 and ¶¶394-405 (ECF No. 6).  Plaintiff asserts that "Defendant Wagner had supervisory authority over [Plaintiff] and is [therefore] personally liable as an employer under the FLSA.  *See,* 29 U.S.C. § 203(a)."  Id. at ¶381.  This is Plaintiff's sole basis for asserting that Defendant Wagner is personally liable to Plaintiff, as an individual, that Defendant Wagner had "supervisory authority" over Plaintiff.  Id.

26.  Plaintiff's conclusory allegations of personal liability on the part of Defendant Wagner under the FLSA are misplaced as Defendant Wagner does not satisfy the criteria set forth in 29 U.S.C. §203 and the case law construing same for an "employer."  Because Wagner is not an "employer" he is not individually liable regarding Plaintiff's FLSA claims for relief.  *See* 29 U.S.C. §216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected…"), *emphasis added*.

27. The term "Employer" is defined by 29 U.S.C. 203(d)[2] as follows:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. 203(d).

28. There are four factors that are typically considered in determining whether a person or entity is an "employer" subject to FLSA:

> The Tenth Circuit has not set out a test to determine whether defendants are employers under the FLSA. Several courts faced with this question … utilize the following test to determine if an entity is an "employer" under the FLSA: An employer under the Act is someone who:
> 1) has the power to hire and fire the employee;
> 2) supervises and controls the employee's work schedule or conditions of employment;
> 3) determines the rate and method of payment; and
> 4) maintains employment records.

Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan, 78 F. Supp. 2d 1142, 1150–51 (D.Colo. 1999).

29. Plaintiff has the "initial burden of proving that an employer-employee relationship existed." Id. at 1150. "To determine whether an employment relationship exists the Supreme Court has indicated that courts should apply an 'economic realities' test." Id. "No one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity. I am persuaded by this authority. Accordingly, I apply these four factors to determine if Defendant is an employer of Plaintiffs." Id. at 1151, *internal quotation marks and citation omitted.*

---

[2] Plaintiff's First Amended Complaint erroneously cites to 29 U.S.C. 203(a) for the definition of 'Employer." First Amended Complaint at ¶381 (ECF No. 6).

Page | 10

30. "The Court's prime focus is 'the economic realities of the relationship' between putative employee and employer—'whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records.'" Thomas v. Pauls Valley Boomarang Diner, LLC, 320 F.Supp.3d 1253, 1258 (W.D. Okla. 2018), *quoting* Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

31. The amount of "control" by the putative employer, however, must be substantial. Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty., 310 F.R.D. 631, 643 (D.N.M. 2015) ("Employer includes persons or entities that have managerial responsibilities which give the person or entity substantial control of the terms and conditions of the work of its employees"), *internal quotation marks omitted.  See also* Hodgson .v Servomation-Ajax Co., 323 F.Supp. 1047 (N.D.Miss 1971) (Where wholly owned subsidiary corporation was under domination and ultimate control of its parent, the affairs of the subsidiary were under the control of the parent corporation's executive officer who had last say over all matters of importance, the parent corporation was the employer). *See also* Arencibia v. 2401 Restaurant Corp., 831 F.Supp.2d 164 (D.D.C. 2011) (Maitre d' was not an employer under FLSA as maître d' had no authority to hire, fire, or discipline employees without prior authorization and had little discretion in setting work schedules); Bureerong v. Uvawas, 992 F.Supp. 1450 (C.D.Cal. 1996) (The base of economic reality in determining possible employee/employer relationship for purposes of FLSA is the dependency of the employee upon the alleged employer).

32. <u>Authority to hire/fire.</u>  Defendant Wagner had no authority to fire Plaintiff. According to Plaintiff, Wagner's attempts to discharge Plaintiff were overridden by Defendant

SEP AG and Mr. Moosreiner after Plaintiff complained to them about Defendant Wagner's attempts. *See, generally,* First Amended Complaint (ECF No. 6) and paragraphs 17 through 21 of this motion, *supra*. Defendant Wagner's decisions were routinely overridden by Mr. Moosreiner and others at Defendant SEP AG. *See, generally,* First Amended Complaint (ECF No. 6) and paragraphs 17 through 21 of this motion, *supra*. Moreover, the Employment Agreement was executed by Defendant SEP Corp and Defendant SEP AG. (ECF No. 6 ¶19). The parties to the Employment Agreement were the Corporate Defendants. Id. at ¶20.

33. There are no facts or allegations set forth in the First Amended Complaint stating that Defendant Wagner had unilateral authority or ability to hire Plaintiff without Defendant SEP AG's consent. This fact is confirmed by Plaintiff's routine appeals to Defendant SEP AG and Mr. Moosreiner. *See, generally,* First Amended Complaint (ECF No. 6) and paragraphs 17 through 21 of this motion, *supra*. All hiring and firing decisions were subject to approval by Defendant SEP AG and Mr. Moosreiner. *See, generally,* First Amended Complaint (ECF No. 6) and paragraphs 17 through 21 of this motion, *supra*. Specifically, *see* paragraphs 117 and 120 of the First Amended Complaint (ECF No. 6) ("On August 3, 2017, [Plaintiff discussed his employment with Mr. Moosreiner and Mr. Ruoff who expressed their disapproval of Defendant Wagner's July 31, 2017 email to [Plaintiff], and they further wanted [Plaintiff] to continue his employment with the corporate Defendants. … Mr. Moosreiner sent a Skype text message to [Plaintiff] stating that he had directed Defendant Wagner to pay for [Plaintiff's] submitted expense reports").

34. There are no facts or allegations in the First Amended Complaint that Defendant Wagner was acting outside the course and scope of his employment or other than on behalf of SEP Corp and SEP AG. Defendant Wagner had no corporate or individual authority to fire

Plaintiff without Defendant SEP AG's consent.  *See, generally,* First Amended Complaint (ECF No. 6) and paragraphs 17 through 21 of this motion, *supra*.

35.     Any assertion that Defendant Wagner had final authority to fire Plaintiff based upon any assertions that the July 31, 2017 email, especially any assertions based on events that took place *after* the July 31, 2017 (*see, for example,* ECF No 6 at ¶¶299-300 ("On March 16, 2018, Defendant Wagner responded to Dr. Grobys stating that [Plaintiff] was terminated from Defendant SEP Corp on July 31, 2017") ignores the facts set forth in the First Amended Complaint that Plaintiff basically ignored the July 31, 2017 termination email and kept working for the corporate Defendants with the blessing of SEG AG and Mr. Moosreiner up through and including February/March of 2018.  *See, for example*, Id. at ¶281 ("On or about February 20, 2018, Defendant SEP AG deposited another $5,000.00 gross into [Plaintiff's] bank account").

36.     The facts set forth in the First Amended Complaint show, conclusively, that Defendant Wagner did not have the authority to hire/fire Plaintiff.  *See* Hall v. Bellmon, 935 F.2d at 1109–10, *supra* ("The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. … a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile").  The facts alleged in the First Amended Complaint are not sufficient to set forth a plausible assertion that Defendant Wagner had the authority to hire/fire Plaintiff. Twombly, 550 U.S. at 570, 127 S.Ct. 1955; *supra*; *see also* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully).

Plaintiff's First Amended Complaint should be dismissed against Defendant Wagner for failure to state a claim for relief.

37. <u>Supervise and control Plaintiff's work schedule or conditions of employment.</u> This is the sole element cited by Plaintiff in support of his assertion that Defendant Wagner was an "employer" of Plaintiff's in reference to the FLSA. (ECF No. 6 ¶381). The facts, as set forth in the First Amended Complaint and in Plaintiff's Employment Agreement demonstrate that Plaintiff had ultimate control over his own work schedule and his own conditions of employment. (ECF No. 8-1; Id. at Attachment A, page 5). Plaintiff's duties were set forth in the Employment Agreement and how he accomplished those tasks was up to him. (ECF No. 8-1; Id. at Attachment A, page 5). This assertion is supported by the facts set forth in the Complaint. *See, for example,* ECF No. 6 at ¶62 ("Throughout Year 2017, [Plaintiff] conducted his job duties in the same manner, by notifying Defendant Wagner and Mr. Moosreiner regularly (for example, on the standard, weekly, scheduled conference call) about past and future business activities planned by [Plaintiff], and subsequently, he then arranged his own travel schedule accordingly, attending both internal and external events for the benefit of both corporate Defendant").

38. Defendant Wagner listening "intently" on conference calls (ECF No. 6 at ¶¶68, 71), or being "side-by-side" next to Plaintiff at a conference, Id. at ¶60, does not rise to the level of Defendant Wagner supervising and controlling Plaintiff's work schedule or conditions. The supervision and control must be significant. *See* Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty., 310 F.R.D. 631, 643 (D.N.M. 2015) ("Employer includes persons or entities that have 'managerial responsibilities' which give the person or entity 'substantial control of the terms and conditions of the work of [its] employees.'") *citing and quoting* Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct.

427, 38 L.Ed.2d 406 (1973). Any assertion that Defendant Wagner exercised significant control over Plaintiff's work schedule, the conditions of his employment, or supervision are belied by the terms of Plaintiff's Employment Agreement and the fact that Defendant SEP AG and Mr. Moosreiner routinely reversed decisions made by Defendant Wagner, *supra* at ¶¶17-23. Further, when Plaintiff had questions about his employment, he frequently went directly to Mr. Moosreiner for clarification/confirmation. *See, for example,* First Amended Complaint at ¶91 ("Mr. Moosreiner asked Mr. Biewald to meet him … for a 'heart-to-heart' lunch. There, both Mr. Moosreiner and Mr. Sebastian Moosreiner asked [Plaintiff] to forge ahead in his job duties despite some 'temporary' issues").[3]

39. The Plaintiff's work schedule and conditions of his employment are set forth in Plaintiff's Employment Agreement, which states that any changes thereto have to be made in writing signed by all parties, etc. (ECF 8-1, page 2, ¶5); *see also* First Amended Complaint at ¶22 (ECF No. 6 ¶22). The First Amended Complaint is replete with examples of Plaintiff asserting the terms and conditions of the Employment Agreement to all of the Defendants. *See, for example,* First Amended Complaint at ¶83 (ECF 6 ¶83) ("[Plaintiff] pointed out that this was a very serious violation of the terms and conditions of the [Employment] Agreement").

40. As such, Defendant Wagner did not exercise a significant or substantial level of supervision and control over Plaintiff that rises to the level of an employer for purposes of FLSA, any more than the maître d' referenced above.[4] The facts alleged in the First Amended Complaint

---

[3] Upon information and belief, Christian Ruoff, Board Member and Shareholder of the corporate Defendants, was also at this "heart-to-heart" lunch with Mr. Moosreiner and Plaintiff.
[4] Plaintiff may assert that Defendant Wagner "castigated" Plaintiff in his dealings to Plaintiff, *see* First Amended Complaint at ¶241 (ECF No. 6 ¶241) such that there may be an inference that Defendant Wagner supervised Plaintiff for purposes of an FLSA employer determination. *See*

are not sufficient to set forth a plausible assertion that Defendant Wagner had the requisite level of control over Plaintiff to be adjudged an employer for purposes of FLSA. Twombly, 550 U.S. at 570, 127 S.Ct. 1955; *supra*; *see also* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully). Plaintiff's First Amended Complaint should be dismissed against Defendant Wagner for failure to state a claim for relief.

41. <u>Rate and method of payment</u>**.**  As was discussed above, Plaintiff's Employment Agreement, which Plaintiff vigorously and consistently asserted regarding any deviations in payments made to him, controlled Plaintiff's income. *See, generally,* Employment Agreement (ECF No. 8-1, ¶2); *see also, for example,* First Amended Complaint at ¶¶83, 84, 95, 112, 113, 153, 163, 170, 188 (ECF No. 6). If there were any deviations, or delays, regarding any payments, Plaintiff complained to SEP AG and Mr. Moosreiner, which resulted in SEP AG telling Defendant Wagner to comply with Plaintiff's requests. *See, for example,* Paragraph 21 *supra*.

42. As set forth above, the facts alleged in the First Amended Complaint are not sufficient to set forth a plausible assertion that Defendant Wagner had any control over the amount of payments due to Plaintiff, Plaintiff was diligent and hyper-vigilant over how much he was owed from the corporate Defendants pursuant to the Employment Agreement signed by him and the corporate Defendants; any attempts made by Defendant Wagner to exert control over those

---

Inniss v. Rocky Mountain Inventory, Inc. 385 F.Supp.3d 1165, 1169 (D.Colo. 2019). The individual defendants in the Innis matter were, however, "all owners of [the corporate defendant]," Id. at 1168, and no other individuals or parent corporations involved. Id. In Innis, the individual defendants did not have officers and/or other employees of the parent corporation undermining and reversing the actions of the subsidiary and, as such, is distinguishable on the facts.

payments were subject to review, and reversal, by the corporate Defendants, in the person of Mr. Moosreiner, at the behest of Plaintiff. *Supra* at ¶21. *See also* Twombly, 550 U.S. at 570, 127 S.Ct. 1955; *supra*; *see also* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully). Plaintiff's First Amended Complaint should be dismissed against Defendant Wagner for failure to state a claim for relief.

43. Employment Records. The employment records regarding Plaintiff were centrally located with SEP AG in control of the records. *See* First Amended Complaint at ¶¶46-48 (ECF No. 6) ("Defendant Wagner, Mr. Moosreiner, Mr. Sebastian Moosreiner, and Mr. Biewald worked together to ensure [Plaintiff] was authorized for work and that he was quickly set up on payroll"). *See also, for example,* Id. at ¶224 ("[O]n the subject of vacation days, and for the accuracy of Defendant's HR records and proper tracking of [Plaintiff's] employee benefits and earned wages, [Plaintiff] once again provided Defendant Wagner and Mr. Moosreiner with a cumulative list of all vacation days taken"); at ¶237 ("[Plaintiff] emailed Mr. Arrone Appel (the CPA for the corporate Defendants) regarding the missing reporting of earned wages"). Payroll, as it relates to Plaintiff, was through ADP. Id. at ¶¶218, 228.

44. Plaintiff and/or SEP AG, as noted in the First Amended Complaint, directed Defendant Wagner to correct and/or supplement records regarding Plaintiff's pay. *See* Id at paragraphs 18-21, *supra*. *See also* Id. at ¶¶218, 228. The ultimate authority on maintaining Plaintiff's employment records with SEP Corp and SEP AG resided with SEP AG as the employment records, in particular, were updated, added to, and/or modified at the request of

Defendant SEP AG, at the direction of Ms. Moosreiner and at the behest of Plaintiff. *See* Id at paragraphs 18-21, *supra*. *See also* Id. at ¶¶218, 228.

45. In short, Plaintiff was paid pursuant to the terms of his Employment Agreement through official Corporate Defendant channels. Id. The conclusory allegations in the First Amended Complaint are not sufficient to support a plausible assertion that Defendant Wagner was individually responsible for maintaining Plaintiff's employment records as Defendant SEP AG and Mr. Moosreiner exercised ultimate authority over those records and how much Plaintiff was paid, especially in response Plaintiff's complaints. It is not plausible to infer that Defendant Wagner did. Twombly, 550 U.S. at 570, 127 S.Ct. 1955; *supra*; *see also* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully). Plaintiff's First Amended Complaint should be dismissed against Defendant Wagner for failure to state a claim for relief.

46. Economic Reality Test**.** The "economic reality" is that Defendant SEP AG, by and through Georg Moosreiner (Chairman of the Board of Defendant SEP Corp. and CEO of Defendant SEP AG) (ECF No. 6 ¶21) exercised authority and control over whether Plaintiff was fired, over Plaintiff's schedule and conditions of employment, over his rate and method of payment, and maintained the Plaintiff's employment records, as SEP AG was the parent corporation for SEP Corp. Plaintiff communicated directly with Moosreiner, particularly when he was not pleased with his communications with SEP Corp. Plaintiff was frequently successful in persuading Defendant SEP AG to force Defendant Wagner to comply with Plaintiff's demands. Paragraphs 17-22, *supra*. *See* Thomas, 320 F.Supp.3d at 1258, *supra*; Twombly, 550 U.S. at 570,

127 S.Ct. 1955; *supra*; *see also* Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

47.     "It is our conclusion that under the contract Kuner-Empson had no control over the hiring or firing of the workers. From this and the other enumerated facts of the relationship the conclusion follows that Kuner-Empson was not an employer and did not, therefore, violate the provisions requiring an employer to keep records." Mitchell v. Hertzke, 234 F.2d 183, 190 (10th Cir. (Colo) 1956).  By the allegations in Plaintiff's First Amended Complaint it is apparent that the individual Defendant Timothy Wagner was not Plaintiff Biewald's employer and was not in contractual privity with the Plaintiff.

**WHEREFORE**, Defendant Wagner hereby requests that this Court dismiss Plaintiff's claims for relief against him, specifically the Eighth and Ninth Claims for Relief in the First Amended Complaint, for the reasons and authority set forth above and, that this Court deny Plaintiff the opportunity to amend the First Amended Complaint in order to formulate claims against Defendant Wagner as the facts originally alleged will not change; because Defendant Wagner is and always has been subject to the direction and control of Defendant SEP AG, and Mr. Moosreiner, the Plaintiff's Eighth and Ninth Claims for Relief must be dismissed as to Defendant Wagner.  <u>Defendant further moves this Court to hear and determine this motion before trial. Fed.R.Civ.P. 12(i).</u>

Respectfully submitted this 18th day of November, 2019**.**

                                      EDWARD DALE PARRISH, PC

                                      /S/ *Dale Parrish*
                                      _____
                                      Dale Parrish, Esq. (Colo. Bar #11260)
                                      James W. Noland, Esq. (Colo. Bar #33935)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2019, I electronically filed the foregoing **DEFENDANT TIMOTHY WAGNER'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 12(i)** with the Clerk of Court using the CM/ECF system which will send notification to the following e-mail addresses:

Bryan E. Kuhn, Esq. *Bryan.Kuhn@beklegal.com*
Kate W. Beckman, Esq. *Kate.Beckman@beklegal.com*
1660 Lincoln Street, Suite 2330
Denver, CO 80264
*Attorneys for Plaintiff Oliver Biewald*

and I hereby certify that I have mailed or served the document or paper to the following non CM/CEF participants in the manner (mail, hand-deliver, etc.) indicated by the non-participant's name:

George Moosreiner *Via Electronic Mail Only*
SEP AG
*Defendant SEP AG and Defendant SEP Corp.*

Tim Wagner *Via Electronic Mail Only*
*Defendant Tim Wagner*

/S/ *James Noland*
_____
James W. Noland, Esq. (Colo. Bar #33935)
Edward Dale Parrish PC
3000 Youngfield Street, Suite 364
Wheat Ridge, CO 80215
Telephone: (303) 279-4900
Facsimile: (303) 279-4904
Email: dale@parrishlaw.co
*Attorneys for Defendant Wagner*